UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENT JONES,

        Plaintiff,

v.

JULIE TUDOR, *et al.*,

        Defendants.
_____/

Case No. 1:08-cv-300

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983.[1] This matter is now before the court on a motion for summary judgment filed by several defendants employed by the Michigan Department of Corrections (MDOC) (docket no. 30) and a motion to dismiss filed by defendant nurse practitioner (N. P.) Penny Rogers (docket no. 34).

    **I.**    **Background**

    **A.**    **Defendants**

Plaintiff has filed a complaint against fourteen defendants. The following defendants worked at MDOC's Deerfield Correctional Facility (ITF): registered nurse (RN) Julie Tudor; health care unit manager (HUM) Michelle Pelon; assistant resident unit manager (ARUM) Melinda Braman; assistant deputy warden (ADW) Daniel Wilson; Warden Carmen Palmer; psychologist Beyou Tsagaye; secretary Cheryl Cooper; "Chief Psychologist" Rick Raymond; and "Psychologist Services Director" Jud Gildersleeves. The following defendants worked at Hiawatha Correctional

---

[1] Plaintiff advised the court that effective March 25, 2008, he was no longer lodged at a correctional facility and resides in Detroit. *See* docket no. 11.

Facility (HTF): Warden Linda Metrish; N.P. Penny Rogers; resident unit officer (RUM) C. McKenchnie ; RUM Fred Robinson; and assistant resident unit manager (ARUM) Ronald Bailey.[2]

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983. Plaintiff alleges that defendants violated his federal constitutional rights by failing to provide him with adequate medical care, failing to provide him with adequate psychological care, and seizing a bottle of ink.

### B. Eighth Amendment claims

Plaintiff's Eighth Amendment claims arise from alleged inadequate medical care and psychological care. Plaintiff set forth the following allegations. He was transferred from ITF to HTF on February 16, 2005. Compl. at ¶ 17. While at ITF, plaintiff had a special accommodation notice that allowed him "continuous access to toilet with permission from staff" and a "foot basin and callous scraper" for a foot problem. *Id.* On February 18th, N.P. Rogers stated that he could not have these special accommodations at HTF due to custody requirements. *Id.* at ¶¶ 28-29. For this reason, plaintiff alleged that defendants Tudor, Pelon, Braman, Wilson and Palmer violated his constitutional rights when they allowed him to be transferred to HTF. *Id.* at ¶ 76. In addition, defendants Rogers and Metrish allegedly violated plaintiff's right to adequate medical care by

---

[2] Plaintiff has not yet served defendants Tsegaye, Cooper and Raymond.

claiming that he had no need for the accommodations previously received at ITF. *Id.* at ¶ 77. Furthermore, plaintiff alleged that defendant Tsegaye failed to provide adequate psychological care, and that defendants Raymond and Gildersleeve failed to implement psychological therapy. *Id.* at ¶ 79.

### C. First Amendment claims

Plaintiff's first amendment retaliation claims are difficult to discern from his complaint. Plaintiff appears to allege that defendants Tudor, Pelon, Braman, Wilson and Palmer transferred him to HTF, and cancelled his special accommodations, in retaliation for plaintiff filing a discrimination grievance against "Quartermaster Dave Moser." *Id.* at ¶¶ 17-27. Similarly, plaintiff alleges that defendantsTsegaye and Cooper issued a negative report of his group therapy activities in retaliation for filing the grievance against Moser. *Id.* at ¶¶ 39-52, 78.

### D. Fifth and Fourteenth Amendment Claims

Finally, plaintiff alleges that defendant McKenchnie seized a quart of ink from plaintiff when he arrived at HTF, designated the ink as contraband, and then "allowed" the ink to be disposed of. *Id.* at ¶¶ 64-5, 80. Defendant Bailey held a hearing on the contraband removal of some old gym shoes belonging to plaintiff, but "allegedly could not locate plaintiff's quart of ink." *Id.* at ¶ 66. Plaintiff has sued defendants Robinson and Metrish because they are "superiors" over both McKenchnie and Bailey. *Id.* at ¶ 67. Plaintiff further alleged that neither Bailey, Robinson nor McKenchnie investigated the loss of the ink, or contacted the Michigan State Police or the MDOC "Internal Affairs Section" to investigate the alleged loss of plaintiff's ink. *Id.* at ¶ 68. Plaintiff claims that defendants' loss of his ink and failure to investigate the loss of the ink violated his rights to due process and equal protection. *Id.* at ¶ 80.

## II. Motion for summary judgment

Defendants Tudor, Pelon, Braman, Wilson, Palmer, Gildersleeve, Metrish, McKenchnie, Robinson and Bailey have moved for summary judgment on various grounds. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### A. Exhaustion of administrative remedies with respect to defendants Tudor, Pelon, Braman, Wilson and Palmer

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance

4

with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 127 S.Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003),[3] sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. An inmate must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, e.g., the regional health administrator for

---

[3]The court notes that the MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Defendants identify four grievances related to plaintiff's claim that he was transferred to a correctional facility that could not accommodate his medical needs: ITF-2005-02-109-12z (Feb. 23, 2005) (grievance "109"); ITF-2005-02-110-28a (Feb. 23, 2005) (grievance "110"); HTF-2005-02-134-12z (Feb. 24, 2005) (grievance "134"); and, HTF-2005-02-135-28a (Feb. 24, 2005) (grievance "135"). *See* docket no. 1-10. Grievances 110 and 135 were rejected as duplicative of grievances 109 and 134, respectively. *Id.*

In grievance 109, plaintiff complained that "ITF Staff" transferred him to HTF, a facility that would not accept his accommodations, in retaliation for filing grievances. *Id.* It is undisputed that plaintiff appealed grievance 109 through Step III. However, plaintiff failed to identify any particular person being grieved as required by the policy directive. In addition, plaintiff gives no indication of the basis for a retaliation claim, i.e., there is no mention of the grievance filed against "Quartermaster Dave Moser" as alleged in the complaint. Furthermore, plaintiff does not claim that he failed to receive adequate medical attention while incarcerated at ITF. Plaintiff failed to properly exhaust his grievance with respect to defendants Tudor, Pelon, Braman, Wilson and

Palmer as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, these five defendants are entitled to summary judgment for lack of exhaustion.[4]

### B. Defendant Gildersleeve

Plaintiff did not allege that he received any medical or psychological treatment from defendant Gildersleeve. Rather, plaintiff alleged that Gildersleeve, in his position as the "Psychologist Services Director" for "Region II," was responsible for developing programs and administering the psychological care of prisoners. Compl. at ¶¶ 13, 59. Plaintiff alleged that Gildersleeve "failed to develop any program to aid plaintiff," and that plaintiff "was still a risk to society by receiving inadequate care." *Id.* at ¶ 59. While plaintiff apparently blames Gildersleeve for the fact that he "did not properly embrace group therapy process" as required by the parole board, plaintiff does not allege that Gildersleeve participated in plaintiff's treatment. *See id.* at ¶¶ 53-59. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

For this reason, plaintiff's claim against Gildersleeve fails.

Furthermore, the record reflects that Gildersleeve's only involvement in this matter was to provide Step II responses to plaintiff's grievances. *See* docket nos. 1-11, 1-12. "The mere

---

[4] In grievance 134, which was filed at HTF, plaintiff alleges that he was improperly accepted at that institution. *See* docket no. 1-10. It is undisputed that plaintiff appealed this grievance through Step III. However, this grievance is not relevant to plaintiff's claims against defendants Tudor, Pelon, Braman, Wilson and Palmer, because it is directed at the staff at HTF, not any staff members at ITF.

7

denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See, e.g., Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care"). Accordingly, defendant Gildersleeve is entitled to summary judgment.

### C. Warden Metrish and RUM Robinson

Plaintiff's claim against Warden Metrish is based upon the warden's supervision of employees at the HTF. Similarly, plaintiff's only allegation against RUM Robinson is that he was a supervisor of two other defendants (McKenchie and Bailey). Plaintiff cannot maintain claims against Warden Metrish and RUM Robinson based solely on their positions as supervisors. *See Monell*, 436 U.S. at 691; *Taylor*, 69 F.3d at 80-81; *Bellamy*, 729 F.2d at 421. Plaintiff does not allege, let alone demonstrate, that either Warden Metrish or RUM Robinson encouraged or participated in any wrongful conduct against him. RUM Robinson's only connection with plaintiff is his denial of a Step II grievance regarding plaintiff's missing ink. Docket no. 1-12. The denial of this grievance does not state a claim of constitutional dimension. *See Alder*, 73 Fed. Appx. at 841; *Martin*, 14 Fed. Appx. at 309. Plaintiff has failed to state a claim against either of these defendants. Accordingly, Warden Metrish and RUM Robinson are entitled to summary judgment with respect to plaintiff's claims asserted against them.

### D. RUM McKenchnie

Plaintiff alleged that RUM McKenchie violated his due process rights when McKenchie seized and then failed to return a quart of ink. Plaintiff's claim that he was deprived of property without due process of law is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527

8

(1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because plaintiff's claim is premised upon allegedly unauthorized act of a state corrections officer, he must plead and prove the inadequacy of post-deprivation remedies under state law. *See Copeland*, 57 F.3d 476 at 479-80; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir.1993). A prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir.1985). Here, plaintiff did not sustain his burden because he did not allege or demonstrate that his post-deprivation remedies are inadequate. Defendants point out that pursuant to Policy Directive 04.02.110, plaintiff could pursue a claim through the Prisoner Benefit Fund for reimbursement. *See, e.g., Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459 at *2 (6th Cir. July 1, 1993). Accordingly, RUM McKenchie is entitled to summary judgment with respect to plaintiff's claim.[5]

### E. ARUM Bailey

Finally, plaintiff alleges that ARUM Bailey was RUM McKenchie's superior who:

> held a hearing on the contraband removal of some old gym shoes plaintiff had whereas the plaintiff's prisoner number had worn out of the gym shoes. But also allegedly could not locate plaintiff's quart of ink.

---

[5] The court notes that while plaintiff alleged that the loss of the ink violated his "Constitutional rights to due process and equal protection," Compl. at ¶¶ 69, 80, he did not set forth any allegations to support an equal protection claim with respect to the loss of the ink.

Compl. at ¶ 66. Plaintiff further alleged that Bailey (along with Warden Metrish and RUM Robinson) did not allow an outside investigation "as to what occurred with plaintiffs' property [i.e., the ink]." *Id.* at ¶ 80. The gist of plaintiff's claim is that ARUM Bailey's failure to supervise RUM McKenchie led to the loss of the ink. Plaintiff cannot base a § 1983 action against ARUM Bailey on a theory of respondeat superior. *See Monell*, 436 U.S. at 691; *Taylor*, 69 F.3d at 80-81. ARUM Bailey is not liable on this claim, because plaintiff has neither alleged nor shown that Bailey directly participated in the loss of the ink. *See Bellamy*, 729 F.2d at 421. Accordingly, ARUM Bailey is entitled to summary judgment on this claim.

### III. Motion to dismiss

Finally, N.P. Rogers has moved to dismiss for lack of exhaustion. A defendant can raise affirmative defenses in a motion to dismiss. *See, e.g., Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (defendant could properly raise the affirmative defense of qualified immunity "based on a pre-answer motion to dismiss"); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief. A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.") (internal quotation marks and citations omitted).

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied 129 S. Ct. 733 (2008). "Because exhaustion of

administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394 (W.D. Mich. March 5, 2009) (taking judicial notice of MDOC prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding

occurred"); *Smart v. Goord*, 441 F.Supp.2d 631, 637 (S.D.N.Y. 2006) ("[w]hen ruling on a motion to dismiss, the Court may take judicial notice of records and reports of administrative bodies, items in the record of the case, matters of general public record, and copies of documents attached to the complaint"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D.Mich. June 22, 2006) ("In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Keating v. University of South Dakota*, 386 F.Supp.2d 1096, 1102 (D.S.D. 2005) (court took judicial notice of administrative proceedings filed by defendants pursuant to Fed.R.Evid. 201); *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F.Supp.2d 578, 580-581 (W.D.N.Y. 2000) (although documents filed by plaintiff and defendants with various agencies were not attached to plaintiff's complaint, court could properly consider the documents on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6); plaintiff had notice of the documents and relied upon them in bringing this action).

Taking judicial notice of a prisoner's administrative grievance proceeding is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204.

The MDOC's grievance report reflects that plaintiff filed approximately 147 grievances from 1999 through 2007. Two of these grievances, 134 and 135, relate to the denial of plaintiff's special accommodations at HTF. As previously discussed, grievance 135 was denied as duplicative. In grievance 134 plaintiff complained: that HTF lacked appropriate accommodations for plaintiff; that he was improperly accepted at HTF; and that special accommodations given to plaintiff at ITF were enforceable at HTF. The gist of plaintiff's grievance is that he was improperly transferred to HTF. However, plaintiff neither named the HTF medical service provider (N.P. Rogers) as the person grieved nor claimed that Rogers' evaluation violated any of his federal constitutional rights. Plaintiff failed to properly exhaust his grievance with respect to N.P. Rogers as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, plaintiff's claim against N.P. Rogers should be dismissed for lack of exhaustion.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 30) and motion to dismiss (docket no. 34) be **GRANTED**.

Dated: July 20, 2009 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).