UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENT JONES,

        Plaintiff,

Case No. 1:08-cv-300

Hon. Gordon J. Quist

v.

JULIE TUDOR, *et al.*,

        Defendants.
                                    /

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983.[1] Plaintiff originally filed a complaint against fourteen defendants. Three defendant remain: psychologist Beyou Tsegaye; secretary Cheryl Cooper; and "Chief Psychologist" Rick Raymond.[2] This matter is now before the court on an amended motion for summary judgment filed by defendants Cheryl J. Cooper and Rick Raymond (docket no. 67).

      **II.**      **Legal standard**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

---

[1] Plaintiff advised the court that effective March 25, 2008, he was no longer lodged at a correctional facility and resides in Detroit. *See* docket no. 11.

[2] Plaintiff has not yet served defendant Tsegaye.

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III. Plaintiff's retaliation claim against Defendant Cooper

Plaintiff alleged that Ms. Cooper was a secretary at "ITF/RTF" (the Deerfield Correctional Facility). Compl. at ¶ 11. On December 5, 2006, plaintiff was notified that he was denied parole based upon facts from his "assaultive offender group psychotherapy program" ("AOP"). *Id.* at ¶ 39. The AOP report stated that plaintiff "failed to gain adequate insight into his assaultive conduct" and failed "to provide assurance of diminished risk." *Id.* Ms. Tsegaye was plaintiff's psychologist at AOP and Ms. Cooper was the secretary who prepared the AOP report for Tsegaye to sign. *Id.* at ¶ 40. Plaintiff revealed to Tsegaye that he was treated badly by

2

"Quartermaster Dave Moser," who had written plaintiff a notice of intent regarding some damaged socks. *Id.* at ¶ 44. Moser also cursed plaintiff and "showed courtesy to prisoners of his own race in front of plaintiff." *Id.* Plaintiff grieved Moser's conduct and "was found not guilty" of the facts listed on the notice of intent. *Id.* at ¶ 45. Tsegaye did not seemed pleased that a grievance had been filed against a member of Michigan Department of Corrections (MDOC) staff. *Id.* at ¶ 46. After learning of the grievance, Tsegaye was not pleased or satisfied with the way that plaintiff prepared his paperwork and gave him additional instructions or required him to re-do the homework. *Id.* at ¶¶ 47-48.

Plaintiff filed two grievances against Tsegaye and Ms. Cooper to correct the group therapy report. *Id.* at ¶¶ 49-50; Appendices E and F (docket no. 1-11). Ms. Cooper was the respondent to the grievances. *Id.* at ¶ 50. In grievance no. ITF 06-03-00111-12-C, plaintiff claimed that the AOP report, which Ms. Tsegaye signed and Ms. Cooper "completed," contained false, incorrect and exaggerated facts. *See* Appendix E. Plaintiff's other grievance, no. ITF 06-03-0110-12-C-2, did not name Ms. Cooper. *See* Appendix F. The record reflects that Ms. Cooper was the respondent in the Step I grievance response for each of these grievances, which raised a claim that plaintiff "was denied a parole because of his Assaultive Offender Group Psychotherapy Program Termination Report." *See* Appendices E and F. The respondent noted that plaintiff had completed the Assaultive Offender Group Psychotherapy Program and received a copy of his Therapy Termination Report. *Id.* The respondent further noted that making a parole decision is a complex judgment process aimed at assessing overall risk to the community and that prisoners are paroled with or without recommended program involvement. *Id.* For these reasons, the grievance was denied. *Id.*

3

In his claim for relief, plaintiff alleged that defendants Tsegaye and Cooper retaliated against him in violation of his First Amendment right to file grievances

> by issuing negative report of his group therapy activities without also including his positive involvement and according statements as being that were stated by another authoritative source etc. And plaintiff being denied parole based on facts of report and having to take other classes to augment group therapy participation.

Compl. at ¶ 78.

To succeed on a retaliation claim, a plaintiff must show: (1) that he engaged in protected activity; (2) that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was motivated, at least in part, by plaintiff's protected activity. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Ms. Cooper does not contest that plaintiff has met the first element, i.e., filing a grievance against Moser was protected activity. The issues before the court involve the second and third elements of a retaliation claim, i.e., whether Ms. Cooper took an adverse action against plaintiff and whether that action was motivated, in part, by the protected activity.

With respect to the second element, Ms. Cooper contends that the adverse action in this case was the December 5, 2006 parole board decision denying plaintiff parole. *See* Plaintiff's Brief at p. 3 (docket no. 68). The court disagrees. Based upon plaintiff's complaint, the alleged adverse action in this case would be the issuance of the allegedly negative AOP report. Defendants do not address whether this report, which may have played a role in the Parole Board's December 5, 2006 decision, is an adverse action.

Nevertheless, even if plaintiff engaged in protected activity and an adverse action was taken against him, he cannot demonstrate the causal connection in the third element, i.e., that Ms. Cooper's action was motivated, at least in part, by the protected activity. In his complaint,

4

plaintiff alleged that psychologist Tsegaye was responsible for the negative AOP. *See* Compl. at ¶¶ 10, 39-47. It was Tsegaye who allegedly: questioned plaintiff about the Moser incident; did not seem pleased with the grievance being filed against Moser; gave instructions to plaintiff on completing relapse prevention plans and other homework in the group; was not satisfied with plaintiff's paperwork; would instruct plaintiff to re-do his homework; and signed the AOP. *Id.* at ¶¶ 39-47; Appendix E. The only allegation against Ms. Cooper is that she was the secretary who prepared the report for Tsegaye to sign and then responded to his Step I grievance. *Id.* at ¶¶ 40-41; Appendix E and F.

Viewing these allegations in the light most favorable to plaintiff, his claim fails. Plaintiff does not allege that Ms. Cooper was motivated to take retaliatory action due to the grievance filed against Moser. It was Tsegaye, not Cooper, who allegedly "did not seem pleased" by the grievance. In addition, the AOP was signed by plaintiff's psychologist, Ms. Tsegaye. While Ms. Cooper, the secretary, allegedly completed the AOP report for Tsegaye's signature, Cooper played no role in the decision to issue the report. "The motivations of non-decisionmakers cannot establish a causal connection in a retaliation case." *Echlin v. Boland*, 111 Fed.Appx. 415, 417 (6th Cir. 2004), *citing Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir.2001); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir.1999). Accordingly, plaintiff's retaliation claim fails for lack of a causal connection to the alleged retaliation.

Furthermore, the fact that Cooper responded to plaintiff's grievances does not form the basis for a federal constitutional claim. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See, e.g., Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that

the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care").

Accordingly, Ms. Cooper's amended motion for summary judgment (docket no. 67) should be **GRANTED**.

### IV. Plaintiff's Eighth Amendment claim against Mr. Raymond

Plaintiff has identified Mr. Raymond was the Chief Psychologist at ITF/RCF. Compl. at ¶ 12. Plaintiff's allegations against Mr. Raymond appear in paragraphs 58 and 79 of the complaint:

> Defendant Raymond was "Chief Psychologist" for "ITF/RCF" and also failed to implement any program designed to aid plaintiff or give him continuum of psychological care once it was determined plaintiff had failed or did not properly [embrace] group therapy process and insure that adequate psychological care was provided.
>
> \*     \*     \*
>
> The actions of defendant(s) Tsegaye in providing plaintiff with inadequate medical care and along with defendants Raymond and Gildersleeve in failing to implement further therapy of psychological care for plaintiff who was determined to have not accepted or comprehended therapy process. Plaintiff had Eighth Amendment right to adequate psychological care and a continuum of the care in violation of Eighth Amendment right to mental care.

*Id.* at ¶¶ 58 and 79.[3]

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component.

---

[3] The court previously dismissed "Psychologist Services Director" Jud Gildersleeve. *See* docket nos. 46 and 48.

6

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Here, plaintiff did not allege that he received any psychological treatment from Mr. Raymond. Rather, plaintiff alleged that Raymond, in his position as the "Chief Psychologist" at the correctional facility, failed to implement "any program" to aid plaintiff, failed to give plaintiff a continuum of psychological care when he failed to embrace group therapy, and failed to insure that adequate psychological care was provided to him. Compl. at ¶ 58. While plaintiff apparently blames Mr. Raymond for the fact that he "did not properly [embrace] group therapy process," plaintiff does not allege that Raymond participated in plaintiff's treatment. *See id.* at ¶¶ 53-59. Rather, plaintiff's claim against Mr. Raymond arises from his position as the "Chief Psychologist" at the correctional facility.

7

It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff has not alleged that Mr. Raymond encouraged any particular misconduct or directly participated in it. For this reason, plaintiff's claim against defendant Raymond fails.

Accordingly, defendant Raymond's amended motion for summary judgment (docket no. 67) should be **GRANTED**.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Cooper's and Raymond's amended motion for summary judgment (docket no. 67) be **GRANTED**.

Dated: August 3, 2010  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).