UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENT JONES,

        Plaintiff,

Case No. 1:08-cv-300

Hon. Gordon J. Quist

v.

JULIE TUDOR, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983.[1] Plaintiff originally filed a complaint against fourteen defendants. All defendants have been dismissed except for psychologist Dr. Beyou Tsegaye. This matter is now before the court on Dr. Tsegaye's motion for summary judgment (docket no. 97).[2] Dr. Tsegaye's motion is unopposed.

    **I.**    **Plaintiff's retaliation claim against Dr. Tsegaye**

Plaintiff alleged that Dr. Tsegaye, a psychologist, and former defendant Ms. Cooper, a secretary, were employed by the Michigan Department of Corrections (MDOC) at the Deerfield Correctional Facility (ITF). Compl. at ¶ 10. Plaintiff alleged that on December 5, 2006, plaintiff was notified that he was denied parole based upon facts from his "assaultive offender group psychotherapy program" ("AOP"). *Id.* at ¶ 39.[3] The AOP report stated that plaintiff "failed to gain

---

[1] Plaintiff advised the court that effective March 25, 2008, he was no longer lodged at a correctional facility and resides in Detroit. *See* Change of address (docket no. 11).

[2] The court notes that Dr. Tsegaye left Michigan and was not served with the complaint until June 13, 2011. *See* Summons (docket no. 92).

[3] The court notes that the grievances attached to plaintiff's complaint, which are dated February 2006, suggest that the parole denial occurred in December 2005 (i.e., prior to filing the grievances). *See* Grievances

adequate insight into his assaultive conduct" and failed "to provide assurance of diminished risk." *Id*. Ms. Tsegaye was plaintiff's psychologist at AOP and Ms. Cooper was the secretary who prepared the AOP report for Tsegaye to sign. *Id.* at ¶ 40. Plaintiff revealed to Tsegaye that he was treated badly by "Quartermaster Dave Moser," who had written plaintiff a notice of intent regarding some damaged socks. *Id.* at ¶ 44. Moser also cursed plaintiff and "showed courtesy to prisoners of his own race in front of plaintiff." *Id.* Plaintiff grieved Moser's conduct and was found not guilty of the facts listed on the notice of intent. *Id.* at ¶ 45. Tsegaye did not seem pleased that a grievance had been filed against a member of MDOC staff. *Id.* at ¶ 46. After learning of the grievance, Tsegaye was not pleased or satisfied with the way that plaintiff prepared his paperwork and gave him additional instructions or required him to re-do the homework. *Id.* at ¶¶ 47-48.

In February 2006, more than one year after Dr. Tsegaye issued the AOP termination report, plaintiff filed two grievances against Dr. Tsegaye and Ms. Cooper to correct the report. *Id.* at ¶¶ 49-50; Appendices E and F (docket no. 1-11); Termination Report (February 5, 2005) (docket no. 99). In grievance no. ITF 06-03-00111-12-C (no. "111") dated February 6, 2006, plaintiff claimed that the termination report, which Ms. Tsegaye signed and Ms. Cooper "completed," contained false, incorrect and exaggerated facts. *See* Grievance no. 111 (docket no. 1-11 at p. 6). Plaintiff's other grievance, no. ITF 06-03-0110-12-C-2 (no. "110") dated February 5, 2006, complained that the AOP report made him "seem illiterate" because it took so long for him to complete the program. *See* Grievance no. 110 (docket no. 1-11 at p. 15). The record reflects that Ms. Cooper was the respondent in the Step I grievance response for both grievances, which raised a claim that plaintiff was denied a parole because of the AOP Termination Report. *See* Step I

---

(docket no. 1-11 at pp. 6 and 15).

Response (noting that grievance no. 110 was a duplicate of grievance no. 111) (docket no. 1-11 at p. 3). Ms. Cooper noted that plaintiff had completed the AOP and received a copy of his Termination Report. *Id.* Ms. Cooper also explained that parole decision-making is a complex judgment process aimed at assessing overall risk to the community and that prisoners are paroled with or without recommended program involvement. *Id.* For these reasons, the grievances were denied through Step III. *See* Grievance nos. 110 and 111 (docket no. 1-11).

In his claim for relief, plaintiff alleged that Dr. Tsegaye and Ms. Cooper retaliated against him in violation of his First Amendment right to file grievances

> by issuing negative report of his group therapy activities without also including his positive involvement and according statements as being that were stated by another authoritative source etc. And plaintiff being denied parole based on facts of report and having to take other classes to augment group therapy participation.

Compl. at ¶ 78. On September 23, 2010, the court granted Ms. Cooper's motion for summary judgment because Ms. Cooper was not a decision-maker with respect to the AOP termination report. *See* Report and Recommendation (docket no. 80); Order Adopting Report and Recommendation (docket no. 86).

## II.   Dr. Tsegaye's motion for summary judgment

### A.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

3

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing

investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### B. Discussion

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff alleged that Dr. Tsegaye retaliated against him in violation of his First Amendment right to file a grievance against an MDOC staff member. Specifically, Dr. Tsegaye issued a "false" AOP termination report on February 5, 2005. To succeed on a retaliation claim, a plaintiff must show: (1) that he engaged in protected activity; (2) that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was motivated, at least in part, by plaintiff's protected activity. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Dr. Tsegaye contends that plaintiff's complaint is untimely. The court agrees. Plaintiff's retaliation claim against Dr. Tsegaye is based upon his participation in the AOP and the doctor's allegedly "bogus and bias" AOP termination report. The record reflects that plaintiff was terminated from the AOP on January 6, 2005, having attended 44 sessions and having completed the program in December 2004. Beyou Tsegaye Affidavit at ¶¶ 4, 6-7 (docket no. 98-2). Dr.

Tsegaye issued the termination report on February 5, 2005, and it included a notation that it was distributed to plaintiff. *Id.* at ¶ 4; Termination Report (docket no. 99 at pp. 2-4). Overall, plaintiff's termination report was positive, reflecting "Fair" to "Good" ratings in every category. *Id.* The report reflects that it was distributed to plaintiff. *See* Termination Report. Plaintiff does not dispute these facts.

In his complaint, plaintiff alleged that the doctor's retaliatory act was issuance of the termination report on February 5, 2005. Compl. at ¶¶ 49-51. Plaintiff filed this action in the Eastern District of Michigan on February 25, 2008, more than three years after Dr. Tsegaye committed the alleged retaliatory act. *See* Compl. (docket no. 1-8). The statute of limitations for a § 1983 claim in Michigan is three years, based upon Michigan's three-year statute of limitations for injury to a person or property, M.C.L. § 600.5805(10). *Chippewa Trading Company v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004). Under federal law the statute of limitations begins to run when a plaintiff knew or should have known of the injury which forms the basis of his claims. *Ruff v. Runyon*, 258 F.3d 498, 500-01 (6th Cir. 2001). Here, plaintiff knew or should have known about the termination report on or about February 5, 2005. Plaintiff filed grievance no. 111 approximately one year later, on February 2006, and stated in the grievance that he was unaware of the "misinformation" in the termination report "until recently." The Step I grievance response suggests otherwise, stating that plaintiff "completed the Assault Offender Group Psychotherapy Program and received a copy of his Therapy Termination Report." *See* grievance no. 111 (docket no. 1-11 at pp. 3 and 6). Plaintiff has not filed a response to Dr. Tsegaye's affidavit or arguments. Because plaintiff does not contest this motion for summary judgment, or the facts stated therein, the court is not required to conduct its own

6

"probing investigation of the record" to demonstrate the existence of genuine issues of material fact with respect to the three-year statute of limitations. *Guarino*, 980 F.2d at 405.

Viewing the evidence in the light most favorable to plaintiff, the court concludes that his claim against Dr. Tsegaye was untimely and is barred by the three-year statute of limitations. Accordingly, Dr. Tesgaye's motion for summary judgment should be granted.[4]

### III. Recommendation

For the reasons set forth above, I respectfully recommend that Dr. Tsegaye's motion for summary judgment (docket no. 97) be **GRANTED** and that this case be **DISMISSED**.


Dated:  January 17, 2012               /s/ Hugh W. Brenneman, Jr.
                                       HUGH W. BRENNEMAN, JR.
                                       United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[4] Because plaintiff's claim is barred by the statute of limitations, it is unnecessary for the court to address Dr. Tsegaye's other grounds for summary judgment.

7